and Mr. Solomons. Good to see you, Mr. Solomons. Yeah, good morning, Your Honor. May it please the Court. This case involves two critical issues involving the Black Lung Program, both in connection with discovery and self-insurance. And the problem here is that the Department of Labor changed all of the rules, reinterpreted the rules or repurposed the rules for the purpose of determining, of establishing some liability for Patriot Coal Company's liability, which had been bankrupt. And I think that all of this was done retroactively and not in connection with either the rules that were in effect before or that self-insurance rules were in effect before. We cited an additional authority. One of the problems here is we had no discovery. Department of Labor wouldn't allow it. In a case that I cited as additional authority called Meredith in this Court, by that time we had a few administrative law judges. Are you talking about the 300 pages plus of documents that you added to your brief here? The addendum, right. Right. And they're not in the administrative record. Why didn't you present them below? Well, we couldn't really present them below because they wouldn't allow us to present them below. Why not? We were required to do that. We expected to do that. We tried to do that. Administrative law judge would not allow any evidence in the case. So they're not in the record? It's not in the record. It's in the addendum. It's not in the record for the appeal. They're not properly in the record. No, it's not properly in the record. That's correct. And why would the administrative law judge not allow you to use these documents? Because it was objected to by the Department of Labor and they argued that the regulations that they were relied upon, which had never been relied upon in prior cases, that the employer was not liable and not able to conduct discovery in that case. I thought it was because the rules say that if you don't introduce those documents before the district director, you can't use them in front of the agency. Well, there's a couple of different questions here. First of all, none of the insurance rules had ever been, none of the rules as a matter of fact had been used by the Department of Labor before the district director that we were required to do that. The district director cannot authorize any kind of discovery. Do you agree that the regulations say that the employer has to put the evidence in, the documents in, in front of the district director, list potential witnesses, and that if the employer fails to do that, they can't introduce those documents or use those witnesses in the hearing before the ALJ, that there's a deadline, except for extraordinary circumstances? You agree that's what the rule says? We've argued, first of all... I'm sorry, do you agree that that's what the rule says? That is what the rule says. No, I don't think so, because the rule doesn't... And I can read it for you. I know, but the rule doesn't address insurance coverage, it doesn't address self-insurance. These rules had never been applied in this way, ever before. Okay. You say that in your brief, but I didn't see a citation for that? There are citations where we had... The rules look like they apply across the board. There were many times before, and there's... Well, give us a citation. You said there are citations. It's not in your brief. Yeah, there is in the brief. We've cited a number of rules before. For many years, when these kinds of issues came up, we did not submit evidence before the district director, because district director cannot deal with evidence. Did you submit evidence before the district director in other cases? No, we never did before. Where did all that evidence in your addendum come from? Did that come from another case in front of the district director? Okay. Excuse me. Sorry. The government says that you did introduce evidence in other cases? Yeah. In front of the district director? We didn't have evidence. We didn't introduce those cases before the district director. We introduced them before the administrative law judge. In other cases? In other cases. And that's on... Here, you didn't introduce them before the district director or before the administrative law judge, correct? No, we did admit them before the administrative law judge. We submitted subpoenas and evidence and evidentiary discovery before the administrative law judge, which is what's required by the statute. That's right. But the administrative law judge said they couldn't consider them because you had not presented them to the district director. That's correct. And we never presented these kinds of cases before the district director. We do have cases here that... Judge Rushing read a rule that said you did have to do it. Do you have one that says you don't have to do it? There are rules that say you have to present it to the ALJ. And that is in the statute in 33 U.S.C., which was incorporated by reference into the Black Lung Act in 919D. And in 919... 33 U.S.C., 919D provides that all of the functions of the district director, which was then called the administrative... well, the deputy commissioner, all of those discovery rules were transferred to the administrative law judge. And then all of the kinds of rules that the district director used to do, which is in C33 U.S.C., I guess in 927, are all those rules that were then transferred to the administrative law judges. And the district director cannot do this. They cannot conduct discovery. They cannot issue subpoenas. They cannot do anything, really. And they never did before. And we never had to do them before. This is a retroactive rule. That's the problem that we have with these issues. And they can't do it. They don't have any function at all to be able to change the rules that the Labor Department has told them that they have to do. They didn't jump through all the hoops to create these rules. That's right. This is all retroactive. Every single part of it. Does Mr. Workman's claim have anything to do with all this? No. This is all about liability. Did Mr. Workman suffer from black lung disease? I don't think he did. But he was awarded benefits. He was a coal miner for 29 years. Yeah, he was awarded benefits. In the underground mines of West Virginia. Yes, that's right. And he passed away. He's dead now. He did. But his widow was getting benefits. That's correct. And always will. And is she still alive? I believe she is, yes. But if she isn't still alive, this is moot, isn't it? This is a question of liability, not of eligibility. The eligibility is over. There wouldn't be anything to be paid. Anyway, but. Well, the question is, who pays? One of the briefs says that she hadn't been paid for two years. I don't believe that's true. I don't know exactly who. She's been paid by the. I don't think that she ever was not paid. He was entitled to black lung benefits and passed away. And she should be getting the benefits. And she's getting them. Because she's alive. But one of the briefs here says she hasn't. Benefits haven't been paid for two years. I don't know about that. I don't think it's true. And the Labor Department, if a minor dies. You're talking about these rules, whether they. There's a lot of rules here. 300 page appendix to a brief. Without asking, without make a motion even. Try it, to try it. You can't do it. But you could, if you were going to try to do it, you'd make a motion to file the extra stuff. There's a rule 10E that says you can supplement a record on appeal in the federal appeals court. But you got to make a motion to do it and explain something and jump through some hoops. And you haven't tried to do anything like that. We didn't do that, no. But I'm worried about Mrs. Workman. I've read some of this stuff. And I'm worried about Mrs. Workman. She ought to be getting her benefits. Her husband mined a coal in the dust underground for 29 years, according to this record. I understand that, but this is not part of this case. Everybody's been paid. Everybody's continuing to be paid. I don't think, ask the Labor Department, but I'm certain that that's the way it works. Mrs. Workman's been getting paid. Everybody's getting paid. But you don't want to pay it. We don't want to pay the Labor Department. No, we don't want to pay the Labor Department. They are entitled to benefits no matter what happens here. You're one of the foremost experts on this stuff in the country. And you ought to know better than attach a 300-page appendix to a brief up here. We were not allowed to submit that into evidence. And actually, as it turns out in this case, it probably doesn't make much difference because we have already proved our case. And I think that shows in the Meredith decision. We proved that the Labor Department changed the rules. They changed all of the self-insurance rules in order to establish that this company... When were these rules written? I thought we were talking about things in the federal regulations. What are the rules you're talking about that were changed? Where are those rules, and when were they written? The rules were changed, I believe, in 2001 in connection with the discovery questions. And the rules in connection... You're saying the rules changed in 2001? 2001. And you're saying before 2001, you didn't have to submit evidence by a certain time? No, after 2001 or so. We never submitted that stuff. You didn't comply with the new rules? No, that's not true. That's not the rules required. But when did they change? When did you have to start doing what you claimed you didn't have to do? In this case, it changed. Where is the change in the rule? Where is the ruling? Well, it's part of the... They're pretty tricky here, you know. I think what we had is that the Labor Department changed the discovery rules for these cases initially in 2016 or 17, I believe. That's when they changed it. Are you raising a constitutional claim for the way they're handling things? This is an APA claim. You're claiming they're violating any due process rights of Hobart or Arch Cole or any of those people? They denied the Administrative Procedure Act. There has never been what the Department of Labor... So you're not challenging based on due process or anything? No, because we don't have to. Okay. What the Department of Labor did in this case and in all of the Arch cases is that they changed the self-insurance coverage rules. In all these Arch cases? In all of them. Arch Cole is one that you're saying... They changed all of them and they changed it in the bulletin. That is a very significant factor in the function of this program in the coverage for self-insurance regulations. They changed it all. It was never in effect before. Because the ALJ and the board both said they didn't need to consult the bulletin. The bulletin had nothing to do with their decision. The bulletin has nothing to do with this. The bulletin has to do with the coverage. Right. So we don't need to review anything about the bulletin because the bulletin wasn't part of the decision in this case. Is that right? That's right. Okay. It's the question of coverage of self-insurance. There has never been a occurrence coverage liability in any workers' compensation program for self-insurance in this entire country ever. And it was never a coverage that applied for self-insurance ever in this program. They just changed it for this. We pointed that out. When we finally were allowed to have some discovery, we proved it. They changed the rules of self-insurance coverage. Okay. Where did you prove it? Where? In discovery. Where's the site for that? It's in the Meredith case. It's in discovery. The officials who worked in the labor department conduct depositions and they told us that. But we don't really even need to do that. We know that. Because that's what it always was. Do you know what the red light means there, Mr. Thornton? I'm sorry. Okay. You saved some time. You got some rebuttal time. Okay. How about Mr. Belcher? Now, Mr. Belcher, are you here for Mr. Workman? Yes, Your Honor. And you're a lawyer down in Norton? Yes, Your Honor. Good to have you with us. Thank you, Your Honor. And may it please the Court, I am Alexander Belcher and I am representing Mr. Leroy Workman, the coal miner who initially filed this claim. And I intend on focusing on the timeliness issue before the Court today. Now, Mr. Workman is deceased? Yes, Your Honor. He passed away in 2021. Now, regarding the issues raised by Where do we still live? Yes, Joyce Workman is still living. Are the payments to HERB current? I believe they are, Your Honor, but I can verify that. Where did I get the idea that they were two years behind? I'm not sure. I reviewed our brief beforehand. I didn't see a reference to it. I may be mistaken, but to my knowledge currently, I don't believe they're behind. Thank you. Now, its arguments seem to center around the claim that it was improperly excluded from performing a discovery by ALJs Morgan and Epeta regarding its liability as a self-insurer. Now, ARCH was given the opportunity to contest this liability and submit evidence concerning its status in front of the Director as required by the regulations, specifically 20 CFR 408, 410, 414, and 456. Now, the rules state that absent extraordinary circumstances, which were not established in this case, that evidence concerning ARCH's status will not be admitted into the record after the claim is passed to an ALJ from the Director. Now, ARCH was given, one of the assertions made in the brief was that it was impossible to comply with the discovery in the time frame given. So I'd like to go over the length of time. Now, is it accurate that ARCH was required to present this stuff to the Director before it moved on to the ALJ? At least as far as notice for the subpoenaed witnesses, Michael Chance and I think Kim Keismer, 414 establishes that you have to submit notice, which includes the name of the witness, the address, and as established in the Van Dyck case, also you have to state that the purpose for which you're offering the witness testimony in the Van Dyck case, the liable party did not state the purpose for which they were submitting that witness, therefore it was denied. But you don't have to subpoena the information. That's not required. That's not relevant. In fact, I believe 20 CFR 725.351 establishes that for subpoenaing witnesses you have to do it in front of the ALJ. But back to the timeliness issue. After the notice of claim was issued in 2016, they had 90 days to submit this notice, notices, requests, or submissions in front of the District Director. At which point, after that 90 day period, about three months, there's a seven and a half month waiting period between the notice of claim and the schedule for the submission of additional evidence. Now, that doesn't mean that they couldn't do anything during that seven and a half month period of time. They could have been drafting notices, figuring out these, I mean, they likely already knew the identity of these witnesses. This claim has been litigated in various cases. And there's no indication that this is the first time that Michael Chance or Ms. Keismer was identified. But even after the seven and a half month period, there was an additional period during the schedule for the submission of additional evidence in which they could have submitted this notice. And in this case, it was initially 60 days, but upon request from the employer, the scheduled period was extended to 122 days, or about four months. So in total, they had over a year to kind of figure out what it was doing. And out of that, I believe, 12 to 14 months, they had about seven months in which they could have submitted notice, submit requests, or submit evidence. So they requested an extension of time to submit evidence or list witnesses, but then they still didn't list witnesses or submit evidence. They seemed to think the rules applied because they asked for an extension, but then they didn't put any in. Is that what you're saying? That's what it seems to be, Your Honor, because it was initially six days awarded. They argued that it was not possible to do this within the 60 days. They requested until June 1st, and then the DOL granted them an additional month until July 1st, which is what made it 122 days for them to submit this evidence. But nothing was submitted. So what that is, over a year is an exceptionally long period of time to submit a notice of a witness identity. Let's see. Does the Court have any questions? I only have about 15 seconds left or so. The clock is going up. Thank you very much, sir. Mr. Bukowski? Thank you, Your Honor. It's great to be here. You're with the Department of Labor? Yes, my name is Sean Bukowski. I represent the Office of Workers' Compensation Programs of the United States Department of Labor. I'd like to start out just by following up, I think, on Judge King's question about the two years. I don't recall two years in particular being mentioned, but there are likely some benefits that the minor hasn't been paid yet, which would obviously be payable now to his widow. When a minor is awarded disability... Why haven't they been paid? That's what I don't understand. He was disabled under black lung law, and he died. Correct. She's got enough money to eat on, or get her medicine. Well, she has, I assume, under the law, gotten all of the benefits in her survivor's claim. You know, she was automatically entitled to benefits because her husband was awarded benefits for his lifetime. But there's a statutory limitation. I guess I might be getting into too much detail here. But the Black Lung Disability Trust Fund has two main purposes. One is it's sort of the ultimate backstop if there's no employer that can pay. But also it pays benefits called interim benefits. So when you file a black lung case and you get a proposed decision order that recommends an award, finding that the minor is entitled, at that point the trust fund begins to pay monthly benefits to the minor that it will then recoup against the operator once the case is over. But your entitlement to benefits is actually not from the date of the PDO. It's from the date you became disabled. Now, by regulatory default, that's the date the claim was filed, but you can prove it was even sooner. And the Black Lung Disability Trust Fund is specifically forbidden by statute 26 U.S.C. 9501D from paying those kind of back benefits. So if this claimant hasn't gotten everything that she's entitled to, it's because of those back benefits won't be paid to her, you know, for her husband's claim until after this case becomes final. So just out of curiosity, are you saying the trust never pays the back benefits, only a private employer pays them? If the final decision in the case is that there is no liable operator and that's a trust fund liability, the trust fund does pay those back benefits. They just don't pay it on the interim basis. Right now she's not being paid. Right now she is getting paid, but there is a period of time that her husband was entitled to benefits that he was never paid. Those haven't been paid to her. And they have not been given to her yet, because those won't be payable until this case is final. Can you respond to opposing counsel's argument that never in the history of history have the rules been applied this way and that there are new rules and they never had to submit anything before and suddenly they do? Yeah, I think this is maybe a relatively novel situation, but the rules, there are no new rules. There's no rules about, you know, the bulletin. Why do you say it's relatively novel? Well, because you're talking about a situation, let me take a step back. The rules are very clear that you need to submit all of your liability evidence into the record when the case is at the district director level. And there are cases that apply that to, you know, questions about insurance coverage, et cetera, et cetera. Mr. Solomon's says that it's novel to apply this to a self-insurer. And I think the answer is that it's just, it's a very novel situation. Imagine you're a self-insured operator. You get a notice of claim from the Department of Labor that says the Department of Labor thinks you're responsible for black lung benefits if they're awarded in this case. You don't think you are, and you just do nothing. Just do nothing, yeah. And it's not just that Arch, you know, over the, I believe it was a little bit more than 14 months they had from the time they got the notice until the schedule for the submission of additional evidence deadline passed. It's not just that they didn't ask the department for any documents or identify any DOL witnesses. They didn't submit their own evidence that they had in their possession. They didn't, for example, put in the sales contract with Magnum. That's actually the cornerstone of their whole argument where they say their liability was transferred. Arch obviously had that when it got the notice of claim, and it just never put it into evidence. Nor did it identify its own witnesses. In the addendum and these other cases they put in this declaration by Mr. Malarkey, who is one of Arch's vice presidents, not identified as a liability witness here in this case. Same thing with Mr. Briscoe, who was a consultant retained by them, who put the deposition testimony there in the addendum, and they didn't identify him. The only liability witness they identified was the minor. So, yeah, I think it's not surprising that there's not a ton of examples of self-insurers just sitting there doing nothing when they've been told that they're liable for a case. So the same rules apply to any potentially liable operator who receives a notice. Yes. I just wanted to get that really clear. Yes, and any insurance carrier that receives a notice. And I think also that this, the 28J case that Mr. Solomon's recommended to Meredith, I think that case totally undermines their argument that the regulations about the liability evidence, meaning being at the district director level, hurt them here. Because that's another case governed by the exact same rules where all the evidence that they want to get in, that they complained about here, is in, including the depositions of Michael Chance and Kim Kazmaier, the two DOL employees they tried to subpoena here. And they had an additional, they had a third DOL witness that they deposed in that case. All the documents and plus all the stuff from their witnesses. And the reason that's in the record in those cases is because ARCH followed the rule and put it in on time. Or there are a number of cases. In their brief, ARCH straight up says, in other cases we were able to put enough evidence that, in ARCH's view at least, proves that DOL released it from liability. Again, those cases were governed by the exact same rules. So, you know, it's not the rule, setting the time limit, that hurt ARCH here. It's the fact that ARCH knew about the rule and just ignored it. They do complain that in some cases, they asked for documents at the district director level from the Department of Labor and didn't get the documents, or at least didn't get all the documents they wanted. But in those cases, like in the Ward ALJ decision that we cite in our brief, if an ALJ finds that ARCH is entitled to some documents, or entitled to depose a witness, that ARCH had brought it to the district director and the district director didn't give it to them, that's an exceptional circumstance that justifies bringing that evidence or bringing those witnesses in at the ALJ level. And the Office of Workers' Compensation Program did not, the director did not oppose that. We think those decisions are exactly right. That is an exceptional circumstance that justifies bringing in liability evidence at a later stage. I would like to go on and briefly talk about ARCH's argument that the liability determination here is a change. The two examples ARCH brings up are the James River Coal Company case, and a case called Allen v. Hobay, sorry, Adkins, my bad. And ARCH says that in James River, the trust just accepted liability on claims where there was a prior self-insured operator. But the case law doesn't bear that out. In a case, Abbott v. McCoy Elkhorn Coal Company, now McCoy Elkhorn Coal Company was a company much, very similar to Hobay, in that it was back in the day owned by this company, Transco, and it was self-insured through Transco's self-insurance program. Transco later sold it to another company. Eventually McCoy Elkhorn was owned by James River Coal Company and it was self-insured through that. Now James River and McCoy Elkhorn went bankrupt, their liabilities were erased, and the Department of Labor, only in cases where the miner only ever worked for McCoy Elkhorn before the sale, so only where the miner only worked for McCoy Elkhorn when it was covered by Transco's self-insurance authorization, the Department of Labor named Transco as responsible for that, just like they named Archer as responsible for Mr. Workman's case. Now there's not a ton of discussion about that, because Transco didn't really challenge it, but I could give you an ALJ case site, Abbott v. McCoy Elkhorn Coal Company, 2019 BLA 5029, an ALJ case where, like I said,  but you can tell from the heading, this is McCoy Elkhorn, self-insured through Transco, and Transco accepts liability in the case. They ask for a remand to say, yes, we agree with the district director, this miner's entitled to benefits and we should pay it. I see that my time has expired, so if there are no further questions? Thank you, Your Honors. Thank you very much, Mr. Bukowski. Mr. Solomon? First of all, one of the things I argued was that they never allowed us to provide any evidence before the district director before we had liability evidence before the ALJ. So on page 30 of our initial petitioner's brief, and we've listed a number of cases where we did that, the cases were only involved where the evidence was submitted before the administrative law judge. Second of all, this is a question of retroactive rules. This is an agency that changed things that was never happened before. And that's really what the problem is here. This is a retroactive rule. That's illegal. Both of the retroactive rules were illegal. And they're very, you know, devious about it, but the fact of the matter is that the rules were never applied that way. And they were never applied that way in connection with self-insurance either. And that self-insurance, what the Labor Department said, I don't want to talk about 932, 30 U.S.C. 932C. The Labor Department says any last employer is liable. That's not what the rules, that's not what the statute says. The statute says, you know what I mean, in 30 U.S.C. 932C, is that it applies to the self- Did you tell all this to the district director? The district director doesn't issue anything about legal stuff. They don't ever do that. And you still don't think you're liable for this claim, correct? That's right. So did you let the district director know when you got the notice? Nobody issues any kind of legal or anything before a district director because they ignore us. They don't pay any attention to what we do. So you ignored the rules before the district director because they are not going to pay attention to you if you The district director does what they do in a manual. They don't do anything that the Labor Department does. They're saying you missed all the deadlines. We didn't miss all the deadlines. There's a lot of discussion here about that. This case was pending before the D.C. Circuit up until, I guess, 2018. And so the D.C. Circuit in 2018 said that What about this regulation that says Documentary evidence pertaining to the liability of a potentially liable operator, which would be ARCH and or the identification of a responsible operator which was not submitted to the district director shall not be admitted into the hearing record in absence of extraordinary circumstances. That makes me think that you I'm still talking. Wait, did you hear me? Judge Thacker, finish your question. Did you submit Okay, I give up. Done. I can't argue that it's there. But what I'm saying is that they never used it before It was never reinterpreted so that you had to file evidence relating to self-insurance or insurance before the time that it was pending before the district director In what legal world is there a complaint or a notice or any sort of accusation that you can just sit there and not respond at all and that's okay? We objected to it. We just didn't have any We didn't give them any evidence. They can't give us any evidence. They can't give us any evidence What about the contract where Hobetz sold to Magnum? Did you provide that in evidence? Eventually. Did you provide that in evidence to the district director? No, we gave the district director in 2005 We gave them that information. The district director. Okay. We gave that to the program. Ms. Sullivan, your time is up. The case will be submitted. We appreciate counsel's assistance. We'll come down and greet counsel and then we'll return to the bench and speak briefly with the law students from down at William & Mary.
judges: Robert B. King, Stephanie D. Thacker, Allison J. Rushing